UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DARIN MATTHEWS,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CRUZ; STEVEN CARNEY; CITY OF SCOTTS VALLEY; SCOTTS VALLEY POLICE OFFICERS (NAMES UNKNOWN) BADGE NUMBERS 5430, 5140, 5890, 5281; TWENTY UNKNOWN DEPUTIES/ AGENTS/EMPLOYEES OF THE COUNTY OF SANTA CRUZ AND TWENTY UNKNOWN OFFICERS/AGENTS/EMPLOYEES OF THE CITY OF SCOTTS VALLEY;<br><br>        Defendants. | Case No. 5:20-cv-01619-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS**<br><br>Re: Dkt. No. 25 |

       Plaintiff Darin Matthews ("Plaintiff") recently filed a complaint (Dkt. No. 1, "Complaint") in this matter against County of Santa Cruz; Steven Carney[1]; City of Scotts Valley; Scotts Valley Police Officers (Names Unknown) Badge Numbers 5430, 5140, 5890, 5281; twenty unknown deputies/agents/employees of the County of Santa Cruz; and twenty unknown officers/agents/employees of the City of Scotts Valley ("All Defendants"). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all City of Scotts Valley defendants (City of Scotts Valley; Scotts Valley police officers (Names Unknown) Badge Numbers 5430, 5140, 5890,

---

[1] Steven Carney is a County Sheriff's Deputy for the County of Santa Cruz. *See, e.g.*, Motion to Dismiss, Dkt. No. 25, at 3.

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

1

5281; and twenty unknown officers/agents/employees of the City of Scotts Valley) ("City Defendants") seek to dismiss all causes of action made against them in the Complaint.[2] Motion to Dismiss, Dkt. No. 25 ("MTD"). The Court took the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, the Court **GRANTS** the motion to dismiss claims made against City Defendants.

**I.      Background**

Plaintiff Darin Matthews is a resident of the County of Santa Cruz. Complaint ¶ 3.[3] Plaintiff alleges that, at approximately 6:30am PST on February 19, 2019, while Plaintiff was driving to work, Plaintiff was pulled over by police officers driving a City of Scotts Valley ("City") police vehicle. *Id*. ¶ 7. Plaintiff stopped his car at the Union 76 gas station on Mt. Herman Road, about one half of a mile from Plaintiff's home. *Id*. The officers informed him that the reason the officers pulled his car over was that Plaintiff was using paper license plates on his vehicle. *Id*. ¶ 8. Plaintiff told the officers that "he had recently purchased the vehicle from a dealership in Oregon." *Id*. Plaintiff offered to show the officers the paperwork but the officers "did not look at or check [P]laintiff's paperwork." *Id*.

The officers asked Plaintiff to get out of his vehicle. *Id*. ¶ 9. The officers told Plaintiff that they "were going to search him." *Id*. Plaintiff alleges that "[w]hen PLAINTIFF asked what was the real reason for the stop, OFFICERS failed and refused to give plaintiff any further explanation." *Id*. At the request of the officers, Plaintiff provided his California driver's license, which was "current and valid." *Id*. The officers did not request "proof of registration or

---

[2] All County of Santa Cruz defendants (County of Santa Cruz; Steven Carney; and twenty unknown deputies agents/employees of the County of Santa Cruz) ("County Defendants") separately filed an answer and a demand for a jury trial in response to Complaint. Dkt. No. 17.

[3] For the purpose of this Motion, the Court relays the following background facts as alleged in the Complaint.

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

2

1    ownership" of the vehicle. *Id*.

2        Plaintiff alleges that "[o]ne of the OFFICERS held [P]laintiff's hands behind his back

3    while another OFFICER pat searched PLAINTIFF." *Id*. ¶ 10. After the pat search, Plaintiff

4    "noticed . . . that there were more marked police cars, including a green COUNTY Sheriff's car[,]

5    parked behind [Plaintiff's] vehicle." *Id*. In Plaintiff's recounting of the events in the Complaint,

6    the arrival of the County Sheriff's car appears to indicate the arrival of County Sheriff's Deputy

7    Steven Carney ("Carney"). *Id*. ¶ 11.

8        As reflected above and below, Plaintiff regularly refers to "OFFICERS" in the Complaint.

9    *See id.* ¶¶ 7–17. Elsewhere in the Complaint, Plaintiff states the following:

10           Officers Badge Numbers 5430, 5140, 5890, and 5281 . . . are

11           members of the CITY police department and are named defendants

12           herein in both their official and individual capacities for their actions

13           against [P]laintiff[] taken under color of state law. OFFICERS and

14           employees of the CITY have engaged in the acts complained of

15           herein pursuant to the policies, practices and customs of the CITY.

16   *Id*. ¶ 5. In their MTD, City Defendants identify the names of the City police officers whose badge

17   numbers are included in the list of defendants in the Complaint. MTD at 1. The officer identified

18   as badge number 5430 is Wayne Belville ("Belville"). *Id*. The officer identified as badge number

19   5890 is Michael Birley ("Birley"). *Id*. The officer identified as badge number 5281 is Michael

20   Neronde ("Neronde"). *Id*. The officer identified as badge number 5140 is Paul Lopez ("Lopez").

21   *Id*. Plaintiff names, in addition to these four officers, "twenty unknown officers/agents/employees

22   of the City of Scotts Valley" as defendants. Complaint ¶ 6. In the Complaint, Plaintiff often uses

23   the term "OFFICERS" without specifying if the term refers to Belville, Lopez, Birley, Neronde,

24   any of the twenty unknown officers/agents/employees of the City, a combination of these, or none

25   of these. *See id.* ¶¶ 7–17. Plaintiff's allegations of what took place after Carney's arrival at the

26   scene of the detainment seem to distinguish the actions of Carney (a County Sheriff's Deputy)

27   Case No.: 5:20-cv-01619-EJD
28   ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY
     DEFENDANTS
     3

from the actions of the other "OFFICERS." *See, e.g.*, *id*. ¶ 11. Nevertheless, it is possible that Plaintiff's use of the term "OFFICERS" may also refer at times to Carney.

Carney approached Plaintiff and told Plaintiff "to sit on the bumper of one of the police vehicles." *Id*. ¶ 11. The officers, without Plaintiff's permission, searched Plaintiff's vehicle, the backpack located in the front seat of Plaintiff's vehicle, and the trunk of Plaintiff's vehicle. *Id*. The officers "found nothing unlawful in [P]laintiff's vehicle." *Id*. The officers did not ask Plaintiff's permission to conduct any of the searches they carried out, and Plaintiff did not give permission. *Id*.

Carney told Plaintiff that "they had a search warrant to search [Plaintiff's] home." *Id*. ¶ 12. Carney "inquired of [P]laintiff if there was a reason why the Las Vegas police would know [Plaintiff's] name." *Id*. Plaintiff told Carney that Plaintiff "owned a home in Las Vegas and traveled there frequently," but that Plaintiff "had never received so much as a parking ticket in Las Vegas." *Id*.

The officers "placed [P]laintiff in the back seat of one of the CITY [p]olice vehicles and drove [Plaintiff] to . . . [Plaintiff's] home." *Id*. ¶ 13. The officers asked Plaintiff for Plaintiff's house key, which Plaintiff provided. *Id*. The officers "assured [P]laintiff that the search would be discreet," but the officers instead "made a great show for [P]laintiff's neighbors[,] with two OFFICERS stationed at the back of [P]laintiff's condo while another 3 or 4 OFFICERS entered [Plaintiff's] home through the front door." *Id*. Many of Plaintiff's neighbors "saw the commotion," including "the police vehicles parked in front of [Plaintiff's] condo and [P]laintiff sitting in the back of the patrol car." *Id*.

The officers then "escorted [P]laintiff into [Plaintiff's] home where they joined [Carney] and [two] other unknown OFFICERS whom [Plaintiff] had not seen previously." *Id*. ¶ 14. Plaintiff asked Carney for the reasons why the search warrant was issued and his house was being searched. *Id*. Carney "gave . . . a vague explanation[,] stating that there had been a lot of 'coming and going' at [P]laintiff's home." *Id*. Carney "stated, falsely, that [P]laintiff's name had been

mentioned in conjunction with a marijuana arrest in Las Vegas." *Id*. Plaintiff "reiterated [to Carney] that while [Plaintiff] owned a home [in Las Vegas], [Plaintiff] had never had any contact with Las Vegas law enforcement or any other law enforcement agency." *Id*. Carney then "told [P]laintiff [that] [Plaintiff] was free to leave." *Id*. ¶ 15. One of the officers drove Plaintiff back to Plaintiff's car, which had remained at the Union 76 gas station on Mt. Herman road. *Id*.

Plaintiff filed a tort claim against City and City officers on August 7, 2019. *Id*. ¶ 16. This claim was denied by letter dated September 5, 2019. *Id*. Plaintiff also filed a tort claim against Santa Cruz County and Carney on August 12, 2019. *Id*. ¶ 17. These claims were denied by letter dated September 25, 2019. *Id*.

Plaintiff alleges six causes of action against City Defendants in the Complaint: (I) violations of the constitutional right to be secure from unreasonable searches and seizures, under 42 U.S.C. Section 1983; (II) violations of the constitutional right to be secure from unreasonable searches and seizures, under 42 U.S.C. Section 1983, specifically regarding the liability of the City of Scotts Valley under a *Monell* theory; (III) violations of protections against false arrest and unlawful search as provided by Art. 1, Section 13 of the California Constitution; (IV) assault and battery; (V) intentional and/or negligent infliction of emotional distress; and (VI) violation of the Bane Act, California Civil Code Section 52.1, *et seq*. *See id*. ¶¶ 18–73. Plaintiff seeks damages, attorney's fees, costs, and "other and further relief the Court deems just and proper." *See id*. ¶¶ 14–15. Plaintiff demands jury trial, *id*. ¶ 74, and seeks leave to amend or supplement the Complaint "as the identities of the unknown defendants are discovered and new evidence is uncovered," *id*. ¶ 15.

City Defendants filed the present motion, seeking to dismiss all of Plaintiff's claims against them. Plaintiff filed an opposition to City Defendants' motion. Dkt. No. 34 ("Opposition," "Opp'n"). City Defendants filed a reply to this opposition. Dkt. No. 35 ("Reply").

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

5

## II. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

## III. Discussion

**A. First Cause of Action: 42 U.S.C. Section 1983**

In his first cause of action, Plaintiff alleges that all City Defendants violated 42 U.S.C. Section 1983. Complaint ¶¶ 18–37. To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. *Iqbal*, 556 U.S. at

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY
DEFENDANTS

6

676. Hence, a government official, whether subordinate or supervisor, may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation" or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (citation and quotation marks omitted).

### i. City of Scotts Valley Police Officers Belville, Lopez, Birley, and Neronde

Plaintiff alleges that Belville, Lopez, Birley, and Neronde ("Four Identified Officers") violated 42 U.S.C. Section 1983 by violating Plaintiff's Fourth Amendment rights. Complaint ¶¶ 18–37. Plaintiff alleges the Four Identified Officers conducted an "unlawful seizure of his person" and an "unlawful search of his person, his automobile, the effects within his automobile, and his home." *Id*. ¶ 24. Plaintiff argues that during his encounter with the officers on February 19, 2019, the officers at all times "were acting under the color of state law in their capacity as . . . OFFICERS[,] and their acts or omissions were conducted within the scope of their official duties or employment." *Id*. ¶ 20. Plaintiff argues that "[n]one of the OFFICERS took reasonable steps to protect Plaintiff from the objectively unreasonable . . . acts of other OFFICERS," and that "each [are] therefore liable for the injuries and damages resulting from [these acts]." *Id*. ¶ 27.

City Defendants point to *Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002), for the proposition that "[i]n order for a person acting under color of state law to be liable under *section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is*

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

7

*no respondent superior liability under section 1983.*" *Id.* at 934 (emphasis added by City Defendants). City Defendants argue that "[t]he Complaint states no facts attributing any particular conduct to each of the individual OFFICER Defendants and improperly attempts to premise liability against each of the individual OFFICERS based on vague conduct of officers generally, including the alleged conduct of unidentified officers other than the four officers/badge numbers identified." MTD at 6. City Defendants argue that "[t]he allegations of Plaintiff's Complaint show that Plaintiff uses the term 'OFFICERS' loosely to refer to officers with the four badge numbers specified, as well as to other officers and officers who were on scene or had contact with Plaintiff at various times during the incident." *Id.* City Defendants argue that "[t]he Complaint fails to state facts showing [the Four Identified Officers'] 'individual participation in the unlawful conduct,' [and] thus the Complaint fails to state a Section 1983 unreasonable search and seizure claim against them." *Id.* (citing *Jones*, 297 F.3d 930 at 935).

In his Opposition, Plaintiff "acknowledges that each Defendant is ultimately entitled to know what charges he faces," but states that he "does not yet have sufficient information to distinguish the various Scotts Valley OFFICER Defendants['] roles in [the alleged torts], one from the other." Opp'n at 13. Plaintiff argues there is no need to "make such specification at the pleading stage." *Id.* Plaintiff argues that it is his intention "to sue each of the Defendant OFFICERS . . . [as being] responsible for each of the wrongs imputed to the group as a whole." *Id.* Plaintiff says it is "possible" that at least one of the Four Identified Officers "did not play any role in the seizure and search events," and that he will be "happy to diminish the claims against various Defendant OFFICERS" "[a]s discovery progresses." *Id.* at 14.

In their Reply, City Defendants respond that "Plaintiff offers no authority to support his assertion that he does not need to attribute facts to the particular officers, or that he can assert claims against them based on 'wrongs imputed to the group as a whole.'" Reply at 2 (citing Opp'n at 13).

The Court finds that there is a rich discussion in the case law regarding the standard for

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

8

finding individual liability under 42 U.S.C. Section 1983 in situations involving a group of individuals each of whom had an unclear role in the alleged violations. *See, e.g.*, *Jones*, 297 F.3d 930; *Rutherford v. City of Berkeley*, 780 F.2d 1444 (9th Cir. 1986); *Chuman v. Wright*, 76 F.3d 292 (9th Cir. 1996); *OSU Student All.*, 699 F.3d 1053. But Plaintiff's claims fail to meet the more fundamental standard under Twombly and Iqbal that a plaintiff must give defendants "fair notice," and "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 550 U.S. at 557; 556 U.S. 662, 678. Plaintiff's allegations are imprecise when referring to the various defendants described in the Complaint. The Complaint fails to adequately give defendants fair notice of the allegations against each of them individually, and therefore prevents the Court from drawing reasonable inferences about any given City Defendant's liability.

The ambiguity in the Complaint mainly comes from Plaintiff's use of the word "OFFICER(S)." Plaintiff indicates that the term "OFFICERS" will refer to the Four Identified Officers. Complaint ¶ 5 ("Officers Badge Numbers 5430, 5140, 5890, and 5281 ('OFFICERS') are members of the CITY police department and are named defendants herein."). But in at least two instances Plaintiff appears to use the term "OFFICERS" to refer to police officers other than the Four Identified Officers. *See, e.g.*, *id.* ¶ 13 ("[T]wo OFFICERS were stationed at the back of plaintiff's condo while another 3 or 4 OFFICERS entered his home through the front door."); *id.* ¶ 14 ("[T]he OFFICERs [sic] removed [P]laintiff from the car and escorted him into his home where they joined CARNEY and 2 other unknown OFFICERS whom he had not seen previously."). Similarly, in at least three instances, Plaintiff appears to use the lower-cased term "officers" to refer to the Four Identified Officers. *See, e.g.*, *id.* ¶ 13 ("The officers then placed plaintiff in the back seat of one of the CITY Police vehicles and drove him to the front of his home."); *id.* ¶ 25 ("These individual defendant officers unlawfully seized [P]laintiff's person by means of threat of physical force."); *id.* ¶ 26 ("These individual defendant officers unlawfully searched [P]laintiff's person, his vehicle and his home by means of threats based on false and defamatory

information."). In at least one instance, Plaintiff appears to use the term "officers" to refer to police officers other than the Four Identified Officers. *See, e.g.*, *id.* ¶ 45 ("Defendants have . . . failed to properly train and/or supervise its officers.").

There is additional confusion because the Complaint names as defendants "twenty unknown officers/agents/employees," *id.* at 1, and in instances when the Complaint seems to identify an officer other than the Four Identified Officers, it is unclear whether Plaintiff is purposefully delineating this other officer as one of the twenty other defendants. *See, e.g.*, *id.* ¶ 26. Moreover, for every cause of action besides the *Monell* cause of action, Plaintiff makes claims again "[a]gainst all Defendants," without distinguishing between the Four Identified Officers, the twenty unidentified officers/agents/employees, and the City of Scotts Valley. *See, e.g.*, *id.* ¶ 6. On its face, the Complaint appears to make allegations against an undefined group of City police officers, four of whom are identified, and none of whom are individually connected to specific allegations.

Plaintiff's Opposition invites an inference that the Four Identified Officers were the officers who were first on the scene of Plaintiff's detainment, in that it specifies there were four police officers initially at the scene of the detainment, and this number coincides with the number of officers identified in the Complaint. *See* Opp'n at 13 ("Although there were four Scotts Valley OFFICERS at the scene, Plaintiff was summoned to stop his vehicle by only one police vehicle. Accordingly, only one (or possibly two) of the four Scotts Valley Officer Defendants are currently known to be responsible for the initial detention of Plaintiff's vehicle and him as a driver of that vehicle. [D]ifferent of these four Scotts Valley OFFICER Defendants may have participated in various of the seizures and searches that occurred."). But even if this suggestion was dispositive of the ambiguity in the Complaint, a brief opposing a motion to dismiss cannot amend a complaint. *See, e.g.*, *Diamond S. J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019).

For these reasons, the Court GRANTS the motion to dismiss the 42 U.S.C. Section 1983

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS
10

1  claims brought against the Four Identified Officers. Leave to amend shall be freely given when
2  justice so requires. Fed. R. Civ. P. 15(a). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.
3  1988). A "proposed amendment is futile only if no set of facts can be proved under the amendment
4  that would constitute a valid claim." *Armas v. USAA Cas. Ins. Co.*, No. 5:17-CV-06909-EJD, 2019
5  WL 3323057, at *3 (N.D. Cal. July 24, 2019) (internal citation omitted). The Court does not find
6  that an amendment for this claim would necessarily be futile and therefore permits leave to amend.

### ii. Twenty Unknown Officers/Agents/Employees of the City of Scotts Valley

For the same reasons given above, the Court finds that Plaintiff does not adequately state a claim that any of the twenty unknown officers/agents/employees of the City violated Plaintiff's constitutional rights via his or her own actions. The Court therefore GRANTS with leave to amend the motion to dismiss the 42 U.S.C. Section 1983 claims brought against the twenty unknown officers/agents/employees of the City.

### iii. Public Entity City of Scotts Valley

To the extent that Plaintiff is attempting to allege a cause of action against the City in its supervisory role, he is precluded from doing so. *See Kentucky v. Graham*, 473 U.S. 159, 168, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (holding that "a municipality cannot be made liable under 42 U.S.C. Section 1983 on a *respondeat superior* basis"). Therefore, the motion to dismiss the first cause of action as to the City of Scotts Valley is GRANTED without leave to amend.

### B. Second Cause of Action: *Monell* – 42 U.S.C. Section 1983

Plaintiff's second cause of action alleges a Section 1983 claim against Defendant City of Scotts Valley. Complaint ¶¶ 38–48. Local governments "can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Plaintiff must plausibly plead the following elements to proceed with his *Monell* claim: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy,

1   custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to
2   [his] constitutional rights; and (4) that the policy, custom or practice was the moving force behind
3   the constitutional violation." *Torres v. Saba*, No. 17-CV-06587-SI, 2019 WL 111039, at *6 (N.D.
4   Cal. Jan. 4, 2019), *aff'd*, 816 F. App'x 143 (9th Cir. 2020).

A *Monell* cause of action can be established in one of three ways. *See Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170. Third, a local government may be held liable under Section 1983 as a final policy maker. *Id.* Plaintiff's *Monell* cause of action is premised on Defendants' alleged policies, customs, or practices.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."). Although "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. Cty. of Merced*, No. 115CV00359MCEEPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 Fed. App'x 859 (9th Cir. 2017).

Here, Plaintiff alleges that the City "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens." Complaint ¶ 44. Plaintiff alleges that the City "created and tolerated an atmosphere of lawlessness, and [has] developed and maintained long-standing, department-wide customs, law enforcement

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

12

1   related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its
2   officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff
3   and the public." *Id*. ¶ 45. In his Opposition, Plaintiff argues that when there is a "larger number of
4   municipal employees involved [in violating individuals' federal rights], it is more likely that their
5   actions are reflecting municipal policy or a failure of municipal training and supervision." Opp'n
6   at 14. Plaintiff argues that the fact that "not one, but four, Scotts Valley Police Officers were
7   [allegedly] involved in a blatant violation of a constitutional right," indicates that the City is liable
8   under *Monell*. *Id*.

9   City Defendants argue that Plaintiff's *Monell* claim should be dismissed because
10  "Plaintiff's Complaint states no facts showing any CITY official municipal policy or widespread
11  practice of unlawful search or seizure similar to Plaintiff's alleged incident, or at all." MTD at 9.
12  City Defendants argue that Plaintiff's claim amounts to an "unsupported conclusion that
13  unspecified policies, procedures and customs existed." *Id*.

14  The Court finds that Plaintiff fails to present sufficient factual allegations supporting the
15  existence of the policies, procedures, customs, or practices required under *Monell*. Plaintiff pleads
16  that four City police officers violated Plaintiff's federal rights, and that this alone indicates that a
17  widespread municipal policy or practice exists. Opp'n at 14. In the section above, the Court found
18  that the facts alleged against the Four Identified Officers were insufficient to state a claim. *See*
19  *supra*. Even if Plaintiff had sufficiently stated a claim against the Four Identified Officers, one
20  isolated incident is not a sufficient basis for a *Monell* claim. *Trevino*, 99 F.3d at 918. Therefore,
21  the Court GRANTS City Defendants' motion to dismiss Plaintiff's *Monell* claim with leave to
22  amend.

23  **C. Third Cause of Action: California Constitution, Art. 1, Section 13**

24  Plaintiff argues that City Defendants' actions violated Plaintiff's rights as provided under
25  the California Constitution. Complaint ¶¶ 49–61. Several key cases have outlined a framework by
26  which courts determine whether a violation of the California Constitution creates an action for

1  damages. *See, e.g.*, *Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 58 P.3d 339

2  (2002). Plaintiff does not engage with this framework. In the Opposition, Plaintiff appears to

3  concede his state constitutional claim, letting City Defendants' motion to dismiss the claim go

4  unaddressed, and saying only that "[i]n the event the Fourth Amendment is construed in a manner

5  different than Plaintiff contends herein, Plaintiff reserves his right to seek an independent

6  construction of the Search and Seizure Clause of the California Constitution regarding these

7  matters." Opp'n at 11. The Court therefore GRANTS City Defendants' motion to dismiss

8  Plaintiff's claims under the California Constitution with leave to amend.

### D. Fourth Cause of Action: Assault and Battery

Plaintiff alleges in his Complaint that City Defendants' actions during Plaintiff's detainment amount to assault and battery. Complaint ¶¶ 62–65. However, Plaintiff appears to concede these claims, as in his Opposition he offers no response to City Defendants' argument that Plaintiff pleaded insufficient facts for an assault and battery claim. MTD at 14–16. The Court GRANTS City Defendants' motion to dismiss Plaintiffs' assault and battery claims with leave to amend.

### E. Fifth Cause of Action: Intentional and/or Negligent Infliction of Emotional Distress

Plaintiff alleges in his Complaint that City Defendants' actions during the search of Plaintiff's home amount to intentional and/or negligent infliction of emotional distress. Complaint ¶¶ 66–70.  In the MTD, City Defendants argue that Plaintiff pleaded insufficient facts for claims of intentional and/or negligent infliction of emotional distress. MTD at 16–18 (arguing, *e.g.*, "Plaintiff's Complaint states no facts showing outrageous conduct by any CITY OFFICER, or any facts showing intentional or reckless disregard by any CITY OFFICER of the probability of causing severe emotional distress to Plaintiff"). In the Opposition, Plaintiff offers no response to this argument. Opp'n at 12. Plaintiff states that "Scotts Valley Defendants can disregard all claims that [they participated] in a home search that emotionally distressed Plaintiff and damaged his reputation" as long as City Defendants show there was a "facially valid" search warrant. *Id*. The

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

14

1 Court finds that, regardless of whether City Defendants can produce the warrant in question,

2 Plaintiff has effectively conceded these claims. The Court therefore GRANTS with leave to amend

3 Plaintiff's claims of intentional and/or negligent infliction of emotional distress.

### F. Sixth Cause of Action: Violation of California Civil Code Section 52.1

Plaintiff's sixth cause of action is for violation of California Civil Code Section 52.1 ("the Bane Act") against City Defendants. Complaint ¶¶ 71–73. The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion. *See* Cal. Civ. Code Section 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338, 949 P.2d 941 (1998) (interpreting Bane Act's use of "interferes" to mean "violates").

"[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 798 (2017), *as modified* (Nov. 17, 2017). Instead, the Bane Act requires that a defendant had a specific intent to violate the plaintiff's protected rights. This specific intent inquiry centers on two questions: "First, 'is the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, 'did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 803 (alterations omitted)). Specific intent does not require a showing that a defendant knew he was acting unlawfully; "[r]eckless disregard of the 'right at issue' is all that [i]s necessary." *Cornell*, 17 Cal. App. 5th at 804.

Case No.: 5:20-cv-01619-EJD
ORDER GRANTING MOTION TO DISMISS CLAIMS MADE AGAINST CITY DEFENDANTS

United States District Court
Northern District of California

For the same reasons given above, the Court finds that Plaintiff's Complaint did not clearly identify which City Defendants were involved in the alleged violations to which the Bane Act claims refer. While the right against unlawful searches and seizures is clearly delineated in the allegations, Plaintiff does not provide sufficient facts to consider the question of the City Defendants' purpose or intent. The Court GRANTS the motion to dismiss Plaintiff's Cal. Civ. Code Section 52.1 claims with leave to amend.

### IV.   Conclusion

For the reasons stated above, the Court GRANTS City Defendants' motion to dismiss in full, with leave for Plaintiff to amend his complaint in accordance with this Order. Plaintiff shall file an amended complaint, if any, by no later than March 23, 2021.

**IT IS SO ORDERED.**

Dated: March 12, 2021

_____
EDWARD J. DAVILA
United States District Judge